UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. Click here to enter text. |
| RONALD SIMPSON, | ) |
| Defendant. | ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant Ronald Simpson, represented by defense counsel Scott Rosenblum, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(B), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 1, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's wire fraud scheme described in the Information, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that the United States will request a sentence within the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).

The defendant also agrees, pursuant to the guilty plea to Count I, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: any and all funds obtained as a result of the defendant's wire fraud offense.

## 3. ELEMENTS:

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, the defendant voluntarily and intentionally devised or participated in the scheme described in the Information to obtain money by means of material false representations or promises;

**Two**, the defendant did so with intent to defraud; and

**Three**, the defendant caused to be used an interstate wire communication, that is an interstate electronic message that the Defendant sent to University officials requesting authority to purchase $199,695 worth of IT equipment.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Defendant Ronald Simpson resided within the Eastern District of Missouri and worked as the Director of Information Technology ("IT") at a local university located in the Eastern District of Missouri (the "University"). As part of his job at the University, the Defendant was responsible for repairing and replacing defective IT equipment at the University's locations. To accomplish these tasks, the Defendant could request permission from authorized University officials to purchase replacement IT equipment. To make a valid IT equipment purchase request, the Defendant had to represent to University officials that the requested IT equipment would be used or installed at University locations. The Defendant was not authorized to use University dollars to purchase IT equipment and then sell the IT equipment to enrich himself.

The University regularly used and ordered IT equipment that was manufactured by C.S.I., a company that manufactures, sells, and supports computer networking equipment on a global scale. Under the contractual arrangement between C.S.I. and the University, C.S.I. would send the University replacement IT equipment if two conditions were met: **(1)** if the University truthfully represented that the IT equipment that needed replacing was defective, and **(2)** if the University truthfully promised to subsequently return the defective IT equipment to C.S.I.

Beginning by at least November 29, 2018, and continuing through at least December 1, 2023, in the Eastern District of Missouri, the Defendant, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud the University and C.S.I. and to obtain money

3

and property from the University and C.S.I. by means of material false and fraudulent pretenses, representations, and promises, as described further herein.

    **A.    The Defendant misappropriated over a million dollars from the University by selling the University's IT equipment that he promised to use or install at University locations.**

During his tenure as the University's Director of IT, the Defendant submitted requests to University officials to purchase hundreds of items of IT equipment. Each of those purchase requests was sent by the Defendant from the Eastern District of Missouri and traveled via interstate wire communication to reach the authorized University officials. In each of those purchase requests, the Defendant falsely represented that the requested IT equipment would be used or installed at University locations. After receiving approval from authorized University officials to purchase the requested IT equipment, the Defendant used University funds to purchase hundreds of items of IT equipment that the Defendant never intended to use or install at University locations.

Instead of installing or using the purchased IT equipment at University locations—as he promised—the Defendant sold the University's IT equipment to a third party vendor without authorization or approval from the University. When the Defendant sold the University's IT equipment to a third party vendor, he received electronic payments into his personal bank accounts via interstate money wirings. In total, the University spent at least one million dollars on IT equipment based on the Defendant's material misrepresentation that the Defendant's requested IT equipment would be used or installed at University locations. Instead of using or installing the IT equipment at University locations, the Defendant sold the IT equipment to enrich himself.

    **B.    In addition to stealing from the University, the Defendant also fraudulently obtained 56 items of IT equipment from C.S.I.—which he later sold to enrich himself—by falsely claiming that the University's IT equipment was defective.**

On dozens of occasions during his tenure as the University's Director of IT, the Defendant fraudulently represented to C.S.I. that the University's IT equipment (which was manufactured by C.S.I.) was defective. The defendant made these fraudulent, material misrepresentations in order to obtain from C.S.I. replacement IT equipment. To initiate his fraudulent requests for replacement IT equipment, the Defendant sent interstate, electronic messages to C.S.I., all of which were connected to the Defendant's University email account. In each of the Defendant's requests for replacement IT equipment to C.S.I., the Defendant made at least two material misrepresentations: **(1)** that University IT equipment was defective, and **(2)** that he would return the purportedly defective IT equipment to C.S.I. In truth and fact—as the Defendant well knew—there was no defective IT equipment and none he would not, and did not, return any of the equipment to C.S.I.

Instead of returning the purportedly defective IT equipment to C.S.I., the Defendant sold the IT equipment that he falsely claimed was defective to a third party vendor. In addition, the Defendant also sold the replacement IT equipment provided to him by C.S.I. to a third party vendor. In total, C.S.I. sent the Defendant $780,233 worth of replacement IT equipment based on the Defendant's material misrepresentations that the University's IT equipment was defective and that he would return the purportedly defective IT equipment to C.S.I. In all, the third party vendor paid the Defendant $2,188,704.20 for IT equipment that the Defendant took from the University and from C.S.I. through material misrepresentations.

On July 5, 2023, within the Eastern District of Missouri, for the purpose of his scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same, the Defendant did knowingly cause to be transmitted by means of wire communication in and affecting interstate

commerce an interstate wiring, to wit an electronic message that the Defendant sent to University officials requesting authority to purchase $199,695 worth of IT equipment.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES: 2023 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** As to Count 1, the parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply as to Count 1:

The parties agree that 16 levels should be added under Section 2B1.1(b)(1)(I) because the loss exceeds $1,500,000, but does not exceed $3,500,000.

The parties have no further agreements on any other specific offense characteristics.

### b. Chapter 3 Adjustments:

(1) **Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the Government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) **Adjustment for Certain Zero-Point Offenders:** If the Court determines that the defendant does not receive any criminal history points from Chapter 4, Part A, then the parties agree that two levels should be deducted under Section 4C1.1(a), because the defendant meets all of the criteria under Section 4C1.1(a)(2) through (a)(10).

(3) **Other Adjustments:** The parties have no further agreement regarding any other adjustments.

d. **Estimated Total Offense Level:** The parties do not have any agreements on an estimated Total Offense Level.

e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

  **f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made above but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

  **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

  **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

  **(2) Sentencing Issues:** In the event the Court accepts the plea, and, after determining the applicable Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, and sentences the defendant within or above the determined Guidelines range.

    b. **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    c. **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

    b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the

term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

    **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

    **e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

    **f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the Information.

    **g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon her interest in all seized items and

further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $2,188,704.20 The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to

suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed

mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

10. <u>**VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**</u>

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

11. <u>**CONSEQUENCES OF POST-PLEA MISCONDUCT:**</u>

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

| | |
|---|---|
| 6-18-2024 <br> Date | DEREK J. WISEMAN <br> Assistant United States Attorney |
| 6/16/24 <br> Date | RONALD SIMPSON <br> Defendant |
| 6/18/24 <br> Date | By SCOTT ROSENBLUM <br> Attorney for Defendant |

14